IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANICE SMITH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>RESURGENT CAPITAL SERVICES, LP, et al.,<br><br>    Defendants. | Civil Action No.: GLR-19-2794 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Resurgent Capital Services, L.P. ("Resurgent") and LVNV Funding LLC's ("LVNV") Rule 12(b)(1) and (6) Motion to Dismiss and Compel Arbitration (ECF No. 15).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion, which it construes as a Rule 12(b)(3) motion for improper venue.

### I.    BACKGROUND

Plaintiff Janice Smith owned a credit card issued by Credit One Bank, N.A. ("Credit One"). (Herthneck Decl. ¶ 4, ECF No. 15-2). Smith's account became delinquent sometime after June 12, 2019. (Id.; Compl. ¶ 23, ECF No. 1).[2] Thereafter, LVNV acquired the debt

---

[1] Also pending is Defendants' Consent Motion to Extend Time for Defendants to Respond to the Complaint (ECF No. 6), which the Court will grant nunc pro tunc.

[2] Citations to the Complaint refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

and assigned it to Resurgent for management. (Compl. ¶ 27). Resurgent sent Smith a letter, dated June 12, 2019 (the "Letter"), informing Smith that "Resurgent Capital Services L.P. manages the above referenced account for LVNV Credit Services and has initiated a review of the inquiry [it] recently received."[3] (Id. ¶¶ 29, 33). Additionally, the Letter informed Smith of her right to validate the debt:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt, or any portion thereof, we will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

(Id. ¶ 34). Smith asserts that the two paragraphs are misleading, confusing, and contradictory because one paragraph indicates that Smith's account is under review while another paragraph advises her to take affirmative action to dispute the debt. (Id. ¶¶ 35–36).

On September 23, 2019, Smith filed a class action lawsuit against Defendants. (ECF No. 1). The two-count Complaint alleges violation of sections 1692e and g of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. (2018). (Compl. ¶¶ 39–48). Smith seeks certification of a class of Maryland residents who received a collection letter from Resurgent on behalf of LVNV, either one year prior to the filing of this action or twenty-one days thereafter, that included misleading or contradictory language

---

[3] Smith's attorney attached a letter from Portfolio Recovery Associates, LLC to the Complaint. (See Compl. Ex. A, ECF No. 1-2). The letter, dated June 6, 2019, pertains to a debt unrelated to this litigation. Accordingly, the Court will not consider it.

regarding the recipients' right to dispute the debt. (Id. ¶ 14). The Complaint requests unspecified damages. (Id. at 12).

On October 24, 2019, Defendants filed a Motion to Dismiss and Compel Arbitration. (ECF No. 15). Smith filed an Opposition on November 7, 2019. (ECF No. 19). Defendants filed a Reply on November 20, 2019. (ECF No. 20).

## II.   DISCUSSION

### A.   Standard of Review

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim, arguing that Smith's claims must be arbitrated pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2018). However, the United States Supreme Court has observed that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974).

Similarly, in Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006), the United States Court of Appeals for the Fourth Circuit concluded that "a motion to dismiss based on a forum-selection clause," such as an arbitration provision, "should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." In reaching that conclusion, the Fourth Circuit recognized that "Supreme Court precedent suggests that [Rule] 12(b)(6) is not the appropriate motion for enforcing a forum-selection clause." Sucampo, 471 F.3d at 549. The Fourth Circuit observed that "because a 12(b)(6) motion may be brought at any time prior to adjudication

3

on the merits, analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing concerns as in the 12(b)(1) context." Id. (citations omitted).

Guided by Scherk and Sucampo, this Court finds it prudent to construe Defendants' Motion as a Rule 12(b)(3) motion for improper venue. "[W]hen a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." Stone v. Wells Fargo Bank, N.A., 361 F.Supp.3d 539, 549 (D.Md. 2019). Where no evidentiary hearing is held, "the plaintiff need only make a prima facie showing that venue is proper." Id. (quoting CareFirst, Inc. v. Taylor, 235 F.Supp.3d 724, 732 (D.Md. 2017)). In assessing whether there has been a prima facie showing of proper venue, the Court must view the facts in the light most favorable to the plaintiff. See id. at 732; see also Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012).

**B.   Analysis**

The FAA "requires courts to enforce covered arbitration agreements according to their terms." Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407, 1412 (2019). To compel arbitration under the FAA, the moving party must demonstrate: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the defendant to arbitrate the dispute." Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks omitted) (quoting Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Here, only the second Galloway prong is in dispute.

4

Defendants note that Smith and Credit One's relationship is governed by a Visa/Mastercard Cardholder Agreement (the "Card Agreement"), which sets forth standard terms, conditions, and disclosures regarding Smith's credit card.[4] (See Herthneck Decl. Ex. 1 ["Card Agreement"], ECF No. 15-3). The Card Agreement contains an Arbitration Agreement, designated as such in underlined, capital letters, which states, in relevant part:

> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State Law is applicable), the State law governing the Card Agreement.[5]

---

[4] Although neither party has raised the issue, the Court notes that although Defendants are not parties to the Card Agreement, they may nonetheless invoke its Arbitration Agreement. Federal courts have recognized five theories under which an arbitration clause can be enforced by or against non-parties: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing alter ego, and (5) estoppel." Bridge v. Credit One Fin., 294 F.Supp.3d 1019, 1025 (D.Nev. 2018).

Here, Defendants may enforce the Arbitration Agreement under estoppel, as Smith's FDCPA claims ultimately stem from her financial obligations to Credit One pursuant to the Card Agreement. See, e.g., In re Pac. Fertility Ctr. Litig., No. 19-15885, 2020 WL 2510751, at *1 (9th Cir. May 15, 2020) (quoting Goldman v. KPMG, LLP, 92 Cal.Rptr. 3d 534, 543 (2009)) (explaining that "[a]pplying equitable estoppel against a signatory requires looking to 'the relationships of persons, wrongs and issues,' with a particular focus on whether the claims the non-signatory seeks to arbitrate are 'intimately founded in and intertwined with the underlying contract obligations'").

[5] Smith's attorney appears to have copied and pasted portions of an unrelated complaint or brief into Smith's Opposition. Counsel references an arbitration clause pertaining to a loan agreement with Credit Acceptance Corporation, who is obviously not a party to this litigation, and discusses violations of the Fair Credit Reporting Act ("FCRA"), which has not been alleged here. (See Pl.'s Mem. Opp'n Def.'s Mot. Dismiss Pl.'s Compl. Compel Arbitration ["Pl.'s Opp'n"] at 12–13, ECF No. 19).

(Card Agreement at 8). The Arbitration Agreement covers "disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of [Smith's] Account"; "disclosures or other documents or communications relating to [Smith's] Account"; "collections matters relating to [Smith's] Account"; and any other related matters with limited exception—i.e., cases filed in small claims court advancing individual claims. (Id.).

The Arbitration Agreement also includes a class action waiver, which provides, in relevant part:

> All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this Arbitration Agreement or the Card Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration.

(Id. at 9).

Defendants argue that, by executing the Card Agreement, Smith agreed that the claims at issue in this case would be arbitrated and that she would forego class action litigation.[6] Smith's Opposition contains fifteen pages of mostly boilerplate statements of law and case summaries. Scattered throughout are references to various contract formation principles, including mutual assent, ambiguity, and unconscionability, with little to no

---

[6] In her Opposition, Smith failed to address Defendants' argument that she waived her right to participate in class action litigation and, thus, concedes the issue. See Muhammad v. Maryland, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim.").

6

factual or legal analysis. Although the arguments are divided into three sections, they all appear to advance only two theories: (1) Smith did not agree to arbitrate unrelated statutory claims, including those arising under the FDCPA; and (2) enforcement of the Arbitration Agreement would be unconscionable because it would lead to "absurd results."[7]

Accordingly, the Court will first examine the language of the Arbitration Agreement to determine if its terms are so ambiguous that Smith could not have consented to the terms. Next, the Court will determine if Smith's FDCPA claims are exempt from arbitration either by specifically enumerated exceptions to the Arbitration Agreement or as a matter of law. Finally, the Court will consider whether enforcement of the Arbitration Agreement would be unconscionable.

### 1. Ambiguity of Arbitration Agreement

Under § 2 of the FAA, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). Thus, like other contract provisions, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). Relatedly, because an agreement to arbitrate is indistinguishable from any other contractual obligation, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to

---

[7] The Court again notes that Smith's attorney continues to reference an unrelated FCRA claim against Credit Acceptance throughout the Opposition. (See, e.g., Pl.'s Opp'n at 25–28). To the extent Smith intended to raise arguments other than those identified here, the Court is unable to determine exactly what those arguments are.

7

submit." Levin v. Alms and Assoc., Inc., 634 F.3d 260, 266 (4th Cir. 2011) (internal quotation marks and citations omitted) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, 96 F.3d 88, 92 (4th Cir. 1996)). To decide whether the parties agreed to arbitrate a certain matter, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Here, the Card Agreement includes a choice of law provision indicating that Nevada law governs its terms. (Card Agreement ¶ 29). Under Nevada law, "[f]ormation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract." Atherton Res., LLC v. Anson Res. Ltd., No. 3:17-cv-00340-MMD-CBC, 2019 WL 78945, at *3 (D.Nev. Jan. 2, 2019) (quoting Shaw v. CitiMortgage, Inc., 201 F.Supp.3d 1222, 1245 (Nev. 2016)). The intent of the contracting parties may be challenged if the contract contains ambiguous terms and conditions, but ambiguously worded contracts are enforceable if "the wording lends itself to a logically acceptable construction that renders them legal and enforceable." Walsh v. Schlecht, 429 U.S. 401, 408 (1977).

"A contract is ambiguous if its terms may reasonably be interpreted in more than one way . . . , but ambiguity does not arise simply because the parties disagree on how to interpret their contract." Galardi v. Naples Polaris, LLC, 301 P.3d 364, 366 (Nev. 2013) (internal citation omitted). "Rather, an ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." Id. (internal quotation marks omitted) (quoting Hampton v. Ford Motor Co., 561 F.3d. 709, 714 (7th

Cir. 2009)). Any ambiguity is construed against the drafter. Doe v. Light Grp., LLC, No. 2:13-CV-2323-APG-PAL, 2014 WL 1764794, at *2 (D.Nev. May 1, 2014) (citing Anvui, LLC v. G.L. Dragon, LLC, 163 P.3d 405, 407 (Nev. 2007)). Thus, in evaluating the enforceability of a contract, courts must first determine "whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." Am. First Fed. Credit Union v. Soro, 359 P.3d 105, 106 (Nev. 2015) (internal quotation marks omitted) (quoting Davis v. Beling, 278 P.3d 501, 515 (Nev. 2012)); see also Traffic Control Servs., Inc. v. United Rentals Nw., Inc., 87 P.3d 1054, 1059 (Nev. 2004) ("[I]f no ambiguity exists in a contract, the words of the contract must be taken in their usual and ordinary signification." (internal quotation marks and footnote omitted)).

Here, Smith does not identify a single provision in the Arbitration Agreement that is ambiguous, indefinite, or susceptible to multiple interpretations. Instead, Smith baldly asserts that "it cannot be said with any sort of confidence that [she] would have agreed to sign away her rights to sue Defendants in state and federal court regarding a whole host of possible statutory and common law claims simply by dint [sic] of her accepting a credit card." (Pl.'s Opp'n at 27). This unsubstantiated assertion is wholly insufficient to allege ambiguity.

Nonetheless, examination of the Arbitration Agreement reveals that it is anything but ambiguous. The Arbitration Agreement is found on the last three pages of the nine-page Card Agreement. It is introduced by bolded, capitalized language that specifically directs the cardholder to "read [the] arbitration agreement . . . carefully" because "it provides that either you or we can require that any controversy or dispute be resolved by

9

binding arbitration." (Card Agreement at 7). The introductory statement explains that "arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding." (Id.). Thereafter, bolded headings identify the topics discussed in the Arbitration Agreement, which include: (1) the parties' unilateral authority to request mandatory, binding arbitration; (2) covered claims; (3) excluded claims; (4) the process by which a party may initiate arbitration, including contact information for the American Arbitration Association; (5) the procedures and laws governing arbitration; (6) costs and reimbursement of expenses; (7) waiver of class actions, consolidation, and joinder of parties; (8) enforcement and finality of arbitration decisions; and (9) the severability and survival of the Arbitration Agreement. (Id. at 8–9).

The Arbitration Agreement does not contain legal jargon; typographical errors; provisions that are inconsistent with either the Arbitration Agreement or the Card Agreement; or terms that have multiple meanings within either the Arbitration Agreement or the Card Agreement. The Arbitration Agreement makes clear that the parties waive their right to litigate disputes that fall within the scope of the Arbitration Agreement before a judge, either individually or as part of a class action, in lieu of mandatory, binding arbitration, if one party so requests.

The Court thus concludes that the Arbitration Agreement unambiguously identifies the parties' obligation to arbitrate specific claims if one party so requests. Accordingly, the Arbitration Agreement may be enforced as written.

## 2. Arbitrability of FDCPA Claims

Smith generally argues that the Arbitration Agreement does not encompass unrelated statutory claims such as her FDPCA claim. The Court disagrees.

Nevada courts have upheld the arbitrability of FDCPA claims.[8] In Ashraf v. Nevada Title and Payday Loans, the plaintiff obtained a short-term loan from Nevada Title and Payday Loans, Inc. ("Nevada Title") that was later discharged in bankruptcy. No. 2:15-CV-1353-GMN-VCF, 2016 WL 843258, at *1 (D.Nev. Mar. 1, 2016). The plaintiff informed Nevada Title that the loan was discharged, but the company continued its collection efforts against her, prompting the plaintiff to file a class action against Nevada Title for violation of the FDCPA and related state laws. Id. Nevada Title moved to compel arbitration because the plaintiff's loan agreement contained an arbitration provision that covered "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief)." Id. (internal quotation marks and citation omitted). The arbitration provision also included a class action waiver. Id. at *1–2. Plaintiff argued, among other points, that the arbitration provision did not apply to her FDCPA claims. Id. at *2.

---

[8] This Court has also recognized the arbitrability of FDCPA claims in a factually similar case. See Lomax v. Weinstock, Friedman & Friedman, P.A, No. CCB-13-1442, 2014 WL 176779, at *4 (D.Md. Jan. 15, 2014), aff'd sub nom. Lomax v. Weinstock, Friedman & Friedman, P.A., 583 F.App'x 100 (4th Cir. 2014) (concluding that plaintiff's FDCPA claims were arbitrable because they bore a "significant relationship" to the underlying contract even though the claims did not "implicate the terms" of the contract).

11

In rejecting plaintiff's argument, the United States District Court for the District of Nevada noted that "[a]nother court in this district has held that a plaintiff's claims against a creditor arising under the FDCPA are sufficiently related to an underlying loan agreement to trigger a broad arbitration provision." Id. at *3 (citing Stewart v. Dollar Loan Ctr., LLC, No. 2:13-cv-0182-JCM-PAL, 2013 WL 3491254 (D.Nev. July 10, 2013)). The court concluded that the arbitration clause encompassed plaintiff's FDCPA claims "[b]ecause the [l]oan [a]greement was the source of the debt upon which Nevada Title was allegedly attempting to collect" and it was those debt collection practices that gave rise to plaintiff's FDCPA claims. Id.

The Arbitration Agreement here is almost identical to the one in Ashraf, compelling the same result. Here, the Arbitration Agreement includes claims based on "any theory of law, any contract, statute, regulation, ordinance, tort . . . , common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief)." (Card Agreement at 8) (emphasis added). In addition to identifying the legal claims subject to arbitration, the Agreement identifies the subject matters that are arbitrable, which include disputes related to "the establishment, terms, treatment, operation, handling, limitations on or termination of [Smith's] Account"; "any disclosures or other documents or communications relating to [Smith's] Account"; and "collections matters relating to [Smith's] Account." (Id.) (emphasis added). The only claims that are explicitly excluded from arbitration are those filed in small claims court in an individual capacity. (Id.).

12

Smith's FDCPA claims stem from a debt collection communication that Resurgent sent Smith, on behalf of LVNV, regarding the debt she incurred with Credit One. Moreover, because Smith filed suit in federal court seeking to represent a class of similarly situated consumers, her FDCPA claims are not exempt from arbitration as provided in the Arbitration Agreement. Accordingly, Smith's FDCPA claims fall squarely within the expansive scope of the Arbitration Agreement and must be arbitrated.

### 3.   Unconscionability of Enforcement

Smith argues that enforcing the Arbitration Agreement as to her FDCPA claims would be unconscionable because it would produce absurd results. The Court disagrees.

A contract or any of its provisions, including an arbitration provision, may be voided under Nevada law if it is both procedurally and substantively unconscionable. U.S. Home Corp. v. Michael Ballesteros Tr., 415 P.3d 32, 40 (Nev. 2018). "[A]n arbitration clause is procedurally unconscionable 'when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.'" Becker v. Keshmiri, No. 3:19-cv-00602-LRH-WGC, 2020 WL 2733944, at *4 (D.Nev. May 26, 2020) (quoting Cohn v. Ritz Transp., Inc., No. 2:11-cv-1932-JCM-NJK, 2014 WL 1577295, at *13 (D.Nev. Apr. 17, 2014)). Substantive unconscionability, on the other hand, concerns the "one-sidedness" of an arbitration clause. Id. The plaintiff bears the burden of establishing that an arbitration agreement is both procedurally and substantively unconscionable. Id.

Here, Smith fails to allege any facts establishing either procedural or substantive unconscionability. Interestingly enough, the Complaint does not even allege that Smith had a contractual relationship with Credit One, what the terms of the contract were, or the circumstances under which the contract was formed. As to Smith's financial obligation to Credit One, the Complaint merely asserts that at "[s]ome time prior to June 12, 2019, an obligation was allegedly incurred to Credit One Bank, N.A.," (Compl. ¶ 23), and that the obligation "arose out of transactions in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes, specifically personal telecommunication services,"[9] (id. ¶ 24). The Complaint is devoid of any useful facts regarding Smith's contract with Credit One. The Court declines to parse through either the Card or Arbitration Agreement in search of evidence supporting Smith's argument. Because Smith has failed to allege any facts supporting her claims for procedural and substantive unconscionability, the Arbitration Agreement may be enforced as written.

In sum, the Arbitration Agreement at issue here unambiguously informed Smith of her obligation to arbitrate covered claims; Smith's FDCPA claims are subject to arbitration under the Agreement; and the Arbitration Agreement is not unenforceable due to unconscionability. Now, the Court must determine if a stay or dismissal is appropriate.

In Choice International Hotels, Inc. v. BSR Tropicana Resort, Inc., the Fourth Circuit held, "[n]otwithstanding the terms of § 3 [of the FAA] . . . dismissal is a proper

---

[9] This assertion is incorrect, as Smith's FDCPA claim relates to credit card debt, and again evidences the lack of attention Smith's attorney dedicated to drafting this Complaint.

14

remedy when all of the issues presented in a lawsuit are arbitrable." 252 F.3d 707, 709–10 (4th Cir. 2001). Additionally, this Court has uniformly dismissed cases where all of the claims are arbitrable. See, e.g., Bey v. Midland Credit Mgmt., Inc., No. GJH-15-1329, 2016 WL 1226648, at *5 (D.Md. Mar. 23, 2016) (granting defendant's motion to dismiss when it moved to stay or, in the alternative, dismiss, holding that "because all of the Plaintiff's claims . . . are subject to arbitration, dismissal of this action is appropriate"). Here, all of Smith's claims are arbitrable. Thus, the Court will dismiss rather than stay this case pending resolution of arbitration.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Rule 12(b)(1) and (6) Motion to Dismiss and Compel Arbitration (ECF No. 15), construed as a Rule 12(b)(3) motion for improper venue. A separate Order follows.

Entered this 24th day of August, 2020.

/s/
George L. Russell, III
United States District Judge
